### PENNSYLVANIA CO. V. ANN MAHONEY, ADMX.

**1. DUTY OF RAILWAY AS TO MOVING SIDETRACKED CARS.**

Notwithstanding the absence of statutory regulations or requirements, a railroad company is required to exercise care proportionate to the dangers at a place where employes, in the discharge of their duties, are required to cross the railway tracks. Thus it is the duty of a railway company operating a side-track where cars are stored, and where employes are frequently obliged to cross between the cars, to give warning of a purpose to move such cars.

**2. RULE AS TO PASSENGERS NOT APPLICABLE TO EMPLOYES.**

The rule of law which excuses passengers from the obligation to observe a strict lookout for trains and locomotives when alighting from or getting upon trains over the tracks of a railway company, does not apply to employes whose duties may require them to cross the tracks in the yards or at the depots of the railway company. Wabash Railroad v. Skiles, 64 Ohio St. 458, followed.

**3. DUTY OF EMPLOYE IN CROSSING TRACK.**

Where the servant is not engaged at work upon the track in such a way as to have his attention drawn from trains coming or going, but is simply passing over the track, he is obliged to exercise as high a degree of care with respect to looking and listening as any other person lawfully or of right passing over the track. Wabash Railroad Co. v. Skiles, 64 Ohio St. 458, followed.

**4. CONTRIBUTORY NEGLIGENCE DEFEATING RECOVERY.**

A railroad employe engaged in operating a stationary engine and dynamo situated on opposite sides of a sidetrack, running through a cut, and where cars are stored, is within the rules above stated, and in attempting to cross the railroad track without looking or listening for the approach of an engine, is guilty of contributory negligence which will defeat his recovery notwithstanding the negligence of the railroad company in failing to sound bell or whistle.

Pennsylvania Co. v. Mahoney.

**5. WHEN ONCE LOOKING AND LISTENING WILL NOT EXCUSE.**

The fact that such employe once looked and listened before attempting to cross the track will not excuse him if, before crossing, he allowed sufficient time to elapse for an engine to come into position where it would render it dangerous for him to cross, and he then attempted to cross without looking or listening.

**6. CONTRIBUTORY NEGLIGENCE—BURDEN OF PROVING EXCUSE.**

Where the circumstances disclose contributory negligence, the matter of excuse must be shown by the person injured and the rule is not different where the person is deceased; then it must be shown by the person seeking recovery for the death.

**7. EVIDENCE OF CUSTOM OF SIGNALS COMPETENT.**

Evidence that it was the custom of a railway company to give warning of the approach of trains or engines at a point where employes were obliged to cross in attending to their duties, is competent to rebut a possible inference of contributory negligence; such custom might come to have the force of a rule of the company requiring such warning; and an employe relying thereon might be excused from looking or listening; under such circumstances it would not lie in the mouth of the company to say that an employe must be vigilant and suspicious, and watch out all the time for a violation of duty upon the part of the company or some employe of the company.

**8. RULE AS TO TESTIMONY ADMITTED.**

Testimony admissible for any purpose should be allowed to go to the jury under proper instructions and it is not good ground for refusing to receive it that it was not admissible as proof of the substantive ground of relief sought.

**9. EVIDENCE RULED OUT AND ISSUES NOT SUBMITTED.**

There is no authority upon which a reviewing court can consider evidence which has been ruled out or determine results upon issues which might hav been in the case but which were not submitted to the jury.

HEARD ON ERROR.

*E. W. Tolerton*, for plaintiff in error.

*C. O. Hunter* and *King & Tracy*, for Hocking Valley Railway Co.

*Hurd, Brumback & Thatcher*, for defendant in error.

PARKER, J.

The action in the court below was by Ann Mahoney, administratrix of the estate of Patrick E. Mahoney, deceased, against the Pennsylvania Company and the Hocking Valley Railway Company to recover on account of the death of Patrick Mahoney, alleged to have been brought about by the negligence of the defendants in the operation of a locomotive engine and cars upon certain tracks in the yard of the Hocking Valley Railway Company in the northern part of the city of Toledo, which tracks seem to have been used and occupied by both of the defendants jointly for their joint use and benefit.

The amended petition sets forth that the Pennsylvania Company is a corporation organized under the laws of Pennsylvania; that it owns and operates a line of railroad in Lucas county and has an office and agent therein; that the defendant, The Hocking Valley Railroad Company, is a railway corporation organized under the laws of the state of Ohio, and owns and operates a line of railroad in Lucas county, and has an agent therein. I read from the petition:

" Plaintiff further says that some time prior to May 11, 1899, the decedent, Patrick E. Mahoney, was in the employ of the defendant, The Hocking Valley Railway Company, as an electrician and engineer, doing work for the said company on its ore docks in the said city of

Toledo, at a point near the foot of Buffalo street in said city. That at said place said last-named company had two railroad tracks running parallel with each other from a northerly to a southerly direction and known as "switch-back" tracks. That said tracks were so constructed as to have a steep incline at the northerly and southerly portion thereof, and between the incline at each end said tracks were from four to eight feet below the surface of the surrounding ground. The said company also maintained on the easterly side of said tracks an engine-house equipped with engines and used by the said company to furnish power for the hoisting of ore to be loaded into cars or boats along said dock. That westerly of said tracks and nearly opposite said engine house the said Hocking Valley Railway Company maintained a building in which dynamos were situated for the purpose of generating electricity to be used in carrying on its work. That at the time hereinafter named, the decedent, Patrick E. Mahoney, was employed by the said The Hocking Valley Railway Company to operate the dynamos in said building, and also to operate the engines in said engine house. That to perform said work it was necessary that he should cross and recross said tracks.

"Plaintiff further says that both of the defendants were in the habit at said time of operating engines and cars over said tracks. That said work was carried on by the defendants for their mutual profit and advantage.

"That the safety of the employes at work on or about said trains and ordinary care on the part of defendants, required that whenever said cars upon said tracks were about to be moved over said tracks, a whistle or bell should be sounded or other warning given to persons who might be upon said tracks that said cars were about to be moved.

"Plaintiff further says that ordinary care and the safety of employes at work on or about said switch-back tracks required that the defendants should have and enforce a rule requiring the men composing the crew of an engine or train to send a man forward ahead of the engine or cars being moved into or upon the said tracks to give warning to said employes of their approach, and further requiring the bell and whistle to be sounded upon such engine before going down upon or over said switch-back tracks.

"And yet the defendants and each of them did wrongfully, carelessly and negligently altogether fail and neglect to have and provide any such rule or requirement, to insure notice of the approach of such an engine or train upon said tracks.

"Plaintiff further says that said dynamo-house and said engine-house were situated above the level of said tracks, and the safety of their employes required that the defendants should provide a foot-bridge or viaduct over said tracks so as to allow the persons employed about said buildings to pass freely from one building to the other without going upon said tracks."

That averment of negligence was abandoned at the trial.

"Plaintiff further says that at and for a long time prior to the said May 11, 1899, the defendants were accustomed to allow and require said decedent and other persons who might be engaged at work in and about said buildings to pass from one building to the other, and provided steps down to said tracks and a pathway or walk across said tracks on the surface of the ground between said buildings for said purposes. * * *

"That some time prior to four o'clock in the morning of said day said companies had caused four freight cars to be placed upon the east-

erly of said tracks and had allowed and stationed said four cars so as to be separated at said crossing between said buildings, to allow said Patrick E. Mahoney and other persons to cross said tracks between said cars in going from one of said buildings to the other.

"That while said Patrick E. Mahoney was so at work, it became necessary for him to, and he did attempt to, cross from the said easterly building to the said building west of said tracks. That just as he was in the act of crossing said easterly track in going to the building on the westerly side of said tracks, the defendants did wrongfully, carelessly and negligently cause an engine with a car or cars attached to be run upon said easterly track and strike with great force said cars which were so standing upon said track. That by reason of said cars being so struck, the same were run with great speed in a southerly direction, and thereby the said four cars were forced together, and the said Patrick E. Mahoney was caught and crushed between the couplers or other parts of two of said cars and thrown upon said track, so that a part of one of said cars passed over his body. That by reason of being so caught between said cars and the same passing over him he was crushed, cut, mangled and bruised, and received such great injuries as to cause his death within a short time thereafter.

"Plaintiff further says that the said defendants did wrongfully, carelessly and negligently run said engine and cars upon said track without giving any warning whatever that the said cars were about to be moved.

"Plaintiff further says that the said Patrick E. Mahoney had no warning or knowledge of the approach of said engine or cars, and did not know the danger to which he was exposed in crossing said track at said time, and was free from negligence contributing to the injuries so received by him.

"That the defendant knew, or by the use of ordinary care ought to have known, that the said decedent while performing his work was crossing said tracks; and that to run said engine and cars over said tracks without giving him any warning of the approach of the same, would expose him to the danger of receiving great bodily injury. That the death of the said decedent was caused solely through the negligence of the said defendants."

The petition then sets forth the names and relationship of the survivors entitled to participate in any amount that may be recovered in the action, and sets forth that the damages amount to the sum of $10,000 and closes with a prayer for judgment for that amount.

The answers of the companies deny all negligence, and aver that the plaintiff came to his death through contributory negligence in failing to look and listen to satisfy himself that no engine was approaching said crossing before he stepped upon the track where he was killed, and that his death was not caused by their negligence.

The case was submitted to a jury, which returned a verdict in favor of the plaintiff against both defendants for the sum of $7,500.

Motions for a new trial, based upon various grounds, and among them, that the verdict was not sustained by the evidence, were filed on behalf of each of the defendant railroad companies, which were overruled, and judgment was entered upon the verdict.

The Pennsylvania Company filed its petition in error here, averring that the verdict was contrary to law and not sustained by sufficient evidence, that errors of law occurred upon the trial prejudicial to it and that

the court erred in overruling its motion for a new trial; and within four months of the time that the judgment was entered in the court below, the Hocking Valley Company filed its cross-petition in error averring practically the same errors with respect to that company. A bill of exceptions was taken in due time and in due form, and is a part of the record presented to us.

The construction of what is called the switch-back for the movement of cars after they have been unloaded, so that they were run down into this cut between the dynamo house and the engine house where the deceased was required to work, and the physical conditions generally, are very fairly described in the petition. It appears that the deceased was at work for the Hocking Valley Company, as averred in the petition; that his work required him to be a part of the time at the dynamo house on the west side of the tracks, and a part of the time at the engine house on the east side of the tracks; that steps had been constructed down into this cut by the railway company to make it convenient for him to cross from the one place to the other, and that his duty required him to cross—some witnesses say as frequently at times as from ten to fifteen minutes, and other witnesses say as often as once an hour. That in the operation of this unloading machinery, in the season when navigation was open, cars were sent up to the south on the east side of the engine house at the end of this switch-back, and then by gravitation —the grade being so constructed—they would run back onto the tracks lying in this low place between the two stations where the deceased was required to work, and that in busy times there were a great many cars run into the cut in that way in the course of a day. There is evidence tending to show that, in order to make it convenient and safe for the persons engaged as the deceased was engaged, as well as for persons who were engaged upon the docks in other classes of work—dock men who were required to cross over these tracks, it was the purpose and custom of the companies to allow spaces to be left between the cars upon these tracks. This provision was made so that these dock men and the deceased and others engaged in like employment, might pass between the cars without being required, as they were at times, to climb over or under the cars.

There is evidence, however, tending to show that this was not uniformly done, but that very often these dock men—who were quite numerous, sometimes running up to hundreds—were required to get across all the tracks as best they could; there being, besides these two tracks at that point, some eight or nine other tracks that they were required to cross, which did not lie down in this low place between these buildings; but there is some evidence tending to show that the purposes and the rule of the companies, or at least the order of those in authority, required that spaces should be left between the cars at this point.

On the occasion of this accident, four cars, as stated in the petition and as shown by the evidence, had been left in this cut or low place on these tracks. The exact location of every one of these cars is a matter of some uncertainty, but we do not regard that as very essential; two of the cars, at least, were between these two buildings, or stations, at which the deceased was required to work; the other two cars, according to the weight of the evidence, were in close proximity to these and lying immediately to the north of them upon the track—though there is some testimony tending to show that they were perhaps a hundred feet

north of the two cars lying next to the engine house—and between the car lying farthest to the south and the car next north of it, there was a space left of about eighteen or twenty inches. Whether this was designedly or accidentally left, does not clearly appear. Upon this morning certain employes had passed across the tracks between those two cars, and it was between those two cars, evidently, that, in attempting to cross over from one station to the other, deceased got caught and crushed.

The accident happened just about the time the sun came up over the horizon, so that it was not dark, and neither was it, in the cut, full daylight. It appears that some of the railroad men at work about there were still carrying their lanterns; they had not laid them aside, though it is not apparent that they then had need of the lanterns. The headlight was still burning upon the engine that caused these cars to be moved, the movement of which resulted in the injury to the deceased.

The locomotive that moved these cars passed down to the north a very few minutes before this accident occurred, upon a track lying immediately west of the dynamo house; it was there switched onto one of these tracks in the cut and came upon that track bringing a gondola car ahead of it and attached to it. It was brought down until it came in contact with these cars standing upon the track in the cut, and when these cars were brought together, the persons operating the train, or two of them at least who were standing upon the front or south end of this gondola car attached to the engine, heard a cry, evidently the cry of the deceased when he was injured, and they ran forward to the south, passing by the three cars and coming to the space between the third and fourth (counting from the north to the south), and there they found him upon the ground between the tracks, upon his hands and knees, evidently very much injured.

He was not able to give any account of how he came to be injured; I believe the only words he uttered were " Take me up " or " Help me out of here."

He appears to have been caught between the bumpers, they having caught upon his person about his hips or just above his hips. When these persons came to this place where they found the deceased, it appears that, by the force of the collision of the cars, the car farthest to the south had been moved somewhat further south and somewhat up the grade towards the part of the switchback from which it had been sent down, and that it was starting to run back towards the north, and they undertook to stop it, but they were unable to do so, and called upon the deceased to lie down so that it might pass over him without injuring him, which he did, and they then succeeded in stopping the car and pushing it out of the way and taking him out from his place of peril.

It is undisputed that in coming into this cut with the locomotive and car upon this occasion and coming down to these other cars (the purpose being to hitch onto them and take them out of the cut, as was customarily done), no signal was given from the locomotive by way of blowing the whistle, ringing the bell or otherwise, and that no special warning was given to the deceased of the approach of the locomotive and car.

Defendants in error contend that some warning ought to have been given, either by the blowing of the whistle, the ringing of the bell or by sending a man forward to look out for persons who might be passing between the cars, or by all of these methods; and the first question

that is presented, therefore, is whether the railway companies were guilty of negligence in thus operating their train.'

I should say it is conceded also that there was no rule of the company requiring that warning should be given, no rule for the guidance of the trainmen, imposing upon them the duty of giving warning by any signal, and it was not a crossing place at which, by any statutory law, the giving of any warning was required. Nevertheless, it is insisted that since this was a place frequently crossed by the employes of the railroad companies—employes who were not trainmen but who were required to go backward and forward across the tracks to and from their work, and since this was a place at which the deceased and persons in like employment for the railroad company were required to cross, as the railroad companies well knew—it devolved upon them before moving trains of cars or locomotives upon those tracks, to give some warning of the purpose to move them.

We are all of the opinion that this contention upon the part of the defendant in error is well founded; that the rules of law applying to the circumstances of this case required that some notice or warning should be given to employes who were required to cross the tracks at this place, especially to those who were in such service as the deceased was performing at this time and place.

A general rule upon the subject of the movement of trains where persons cross by permission is laid down in Harriman v. Railway Co., 45 Ohio St., 11 [12 N. E. Rep., 451 ; 4 A. S. Rep., 507] :

" Where a railroad company has for a long time permitted the public, including children, to travel and pass habitually over its road at a given point, without objection or hindrance, it should, in the operation of its trains and management of its road, so long as it acquiesces in such use, be held to anticipate the continuance thereof, and is bound to exercise care, having due regard to such probable use, and proportioned to the probable danger to persons so using its road."

In the course of the opinion the learned judge, speaking for the court, cites as one of the authorities upon which the court relies, Barry v. Railroad Co., 92 N. Y. 289 [44 Am. Rep., 377], in which this language is used :

" There can be no doubt that the acquiescence of the defendant for so long a time, in the crossing of the tracks by pedestrians, amounted to a license and permission, by defendant, to all persons to cross the tracks at this point. These circumstances imposed a duty upon the defendant in respect to persons using the crossing to exercise reasonable care in the movement of its trains. * * * So long as it permitted the public use, it was chargeable with knowledge of the danger to human life from operating its trains at that point, and was bound to use such reasonable precaution in their management, as ordinary prudence dictated, to protect wayfarers from injury.

" The ground of liability in this case is negligence, and the duty of the defendant to exercise reasonable care, existed irrespective of the fact whether the plaintiff's intestate had a fixed legal right to cross the track, or was there simply by the defendant's implied permission. * * * The circumstances known to the defendant required this. whether the plaintiff's intestate was there by right or by a mere license."

These were both cases in which the action was brought on account of the death of an infant, but the rule appears to be laid down that the duty defined is owing to pedestrians, whether infants or not. In many

such cases, if the pedestrian were an adult, he could not recover because of his own contributory negligence; and it happened in these cases that these infants could and did recover, because they were of that age that negligence in respect to crossing the track could not be imputed to them. But the fact that an adult may be defeated in many or most cases because of his contributory negligence does not affect the rule, or the right of an adult free from negligence. This being the rule with respect to mere licensees, we think that a like rule applies with much greater force in the case of persons who have a right to cross over by virtue of their employment, and especially those whose duty it is made by the railroad company to pass over in the course of their employment.

Was deceased guilty of contributory negligence?

It appears from the testimony that deceased was at work in the engine house on the east side of the cut, and was seen there at work perhaps ten or fifteen minutes before he was found in his injured condition between the cars, so that it is quite probable that he was making the trip from the east to the west across the cut at the time he was caught between the cars, and yet between the time he was seen there and the time he was injured the time was sufficient so that it is possible that he made a trip over to the west side and was returning. However, we assume that the jury were justified from the evidence in finding that he was making the trip from the east to the west across these tracks.

The point at which he attempted to cross between the cars was within eight or ten feet of the bottom of the steps leading down from the engine house to the cut, so that it would have required but a few moments for him to pass from those steps across the track between the cars to a place of safety beyond.

It appears from the evidence that while standing in the door of the engine-house and while passing towards the cut, going down the steps, the tracks of the road, to the north, the direction from which this locomotive and car came, were in full view, and that he could have seen the locomotive and car approach by turning his eyes in that direction at any moment from the time he left the engine-house until he reached the last step before stepping onto the ground, but upon stepping from the last step down onto the ground in the cut his view would then be obstructed by these gondola cars, which were between seven and eight feet high.

It also appears that the track was open to observation, without obstruction, for several hundred feet to the north; that it was about 470 feet from these steps to the place where the switch was located and where the locomotive and car would come upon this particular track.

It is apparent, therefore, as it seems to a majority of this court, that if the deceased had looked towards the right, to take an observation to see whether or not there was a locomotive or cars approaching, before starting to cross the track, and if he had then proceeded directly to this place between the cars where he was injured, he must have observed the locomotive and car approaching from the north; in other words, the distance that the locomotive and car would have to traverse in order to reach the cars between which he was attempting to pass, was so great that it could not have been traversed during the time that would have been occupied by him in walking from the steps down to the opening and through the opening to a safe place beyond.

Lucas Circuit Court.

It is therefore urged on behalf of the plaintiff in error that since he must have seen the locomotive and car, had he looked, if he failed to see them it was because of his failure to look, and that he was guilty of such contributory negligence in passing between those cars as will defeat a recovery on account of his death.

In a case recently decided by the Supreme Court, Wabash Railroad v. Skiles, 64 Ohio St. 458, which went up from Williams county, the rules applicable to persons passing along a highway and attempting to cross over a railroad, are made applicable to persons attempting to cross over a railroad at other points, and are made applicable even to employes who, in the line of their duties, are attempting to cross over the tracks of a railroad company at other points.

In that case a person whose duty it was to care for passenger cars that were accustomed to stand for a time upon the tracks of the company at a station along the line of the Wabash road, and to furnish ice and fresh water for and perhaps to clean up the cars, attempted to pass from the regular passenger platform across one track to another track upon which a car was standing, which it was his duty at that time to serve in some way. He was there in the line of his duty and attempted to pass across to the car in the performance of that service. A rule of the company required that no locomotive should be moved along the tracks at that place unless there was a person upon the front of it to give warning to persons who might cross the track, and apparently without stopping to make a close observation, being concerned with his work and his mind being full of it—as we think is fairly inferable from the averments of the petition in the case—he started to cross the track and an engine ran upon him. No man was in front of it and no warning was given to him in any way; the rule of the company was violated.

It is conceded in passing upon the case, or assumed at least, that the railway company was in this instance guilty of negligence, but it is held that since it was apparent that if he had looked and listened he would have seen or heard this locomotive, he was guilty of contributory negligence in stepping upon the track without so doing; that he could not rely implicitly or wholly upon the performance of duty by other employes, and that the fact that his mind might have been preoccupied by his work would be no excuse. The syllabus reads as follows:

"1. The rule of law which excuses passengers from the obligation to observe a strict lookout for trains and locomotives when alighting from or getting upon trains over the tracks of a railway company, does not apply to employes whose duties may require them to cross the tracks in the yards or at the depots of the railway.

"2. Such employes will be held to the exercise of ordinary care in going from a place of safety upon or across railways tracks; and ordinary care requires that a person in the full enjoyment of the faculties of hearing and seeing, before attempting to pass over a railroad track, should use them for the purpose of discovering and avoiding danger from an approaching train; and an omission to do so, without reasonable excuse therefor, is negligence which will defeat an action by such person to recover damages for an injury to which such negligence contributed.

"3. Where such employe, without looking or listening, steps upon a railway track from a place of safety on a platform, immediately after the passing of a train, and in front of and close to a backing switch

engine, so that he is immediately struck and injured by such engine, he is guilty of contributory negligence, and cannot recover for the injury thus received."

The report of the case sets forth the petition in full. The question was raised in the court below by objection being made to the introduction of any testimony under this petition, it being claimed on behalf of the railroad company that it was apparent from the averments of the petition that the person injured had been guilty of such contributory negligence as would defeat recovery. That contention was sustained by the trial court.

This court, when it came to consider the case on error, took a somewhat different view of the question of pleading and practice involved, being of the opinion and holding that the petition was sufficient to authorize the admission of evidence; that there might be circumstances not disclosed by the pleadings which would amount, in the language of this syllabus, to a " reasonable excuse " for his not looking, and that such circumstances might be proved, under the authority of Baltimore & Ohio Railroad v. Whitacre, 35 Ohio St. 627, although not set forth or appearing in the pleadings; therefore we were of the opinion that any competent and relevant evidence offered should have been submitted to the jury. There might have been some hindrance to the injured person seeing; and we gave some weight and consideration to the fact, which is averred in his pleading, that he had placed some reliance upon the performance of duty by the other employes of the railway company in giving warning of the approach of this locomotive, and we also gave some consideration to the fact, assuming that it might have been proven under the pleadings, that a man might be so concerned with his work, his mind might be so preoccupied thereby, that it, with other circumstances, might afford him some excuse for not looking and listening; but all that appears to have been swept away by the Supreme Court in the consideration of this case, although they do not take occasion to advert to the rule which we thought was applicable to the case, *i. e.*, the rule laid down in Baltimore & Ohio Railroad v. Whitacre, *supra*. The decision seems to have been based upon the ground that if there was any excuse to overcome the apparent negligence of the injured person, such excuse should be pleaded; but, as I have said, we supposed that Baltimore & Ohio Railroad v. Whitacre, *supra*, laid down a different rule upon the subject.

And the court in this case also distinguishes it from Snyder v. Railway Co., 60 Ohio St. 487 [54 N. E. Rep 475], and says that that case does not apply. That was a case where the station agent of a railroad company, who knew all about the movements of trains and the rules and practices of the company, was engaged in assisting in unloading a a car, which work required him to be upon the track a part of the time, and he was run down by a train, of the approach of which he was given no warning ; and it is said, in the course of this opinion with respect to Snyder, that he was on the track, engaged in a duty which required him to be there, and that he could have been seen by the trainmen in time so that they might have avoided the danger, and that it was not a case in which the inference of contributory negligence necessarily arose.

In Wabash Railroad v. Skiles, *supra*, the court says the plaintiff was in a place of safety, and, relying upon the assumption that no engine would be following the west bound train, and that nobody else would be guilty of negligence, he left his place of safety, stepped in front of the engine and was injured. That the inference is that the plaintiff was

himself negligent, and the conclusion that his negligence contributed to his injury, is inevitable.

And so, if the court gave it any consideration at all it must have distinguished Railway Co. v. Murphy, 50 Ohio St. 135 [33 N. E. Rep. 343], and other cases of that character, where the employes were engaged upon the tracks of the company at the time they were injured and were run down by trains or locomotives which gave no warning of their approach. That is to say, that in Railroad Co. v. Murphy, *supra*, as in Snyder v. Railway Co., *supra*, the employment required the servant to be at work *upon* the tracks, whereas in Wabash Railroad Co. v. Skiles, *supra*, as in the case at bar, the employment did not require him to be at work *upon* the track, but only to *cross over* the track; and the rule seems to be laid down that where the servant is not engaged at his work *upon* the track in such a way as to have his attention drawn from trains coming or going, but is simply *passing over* the track, he is obliged to exercise as high a degree of care with respect to looking and listening as is required of any other person lawfully or of right passing over the track.

Applying these rules, it seems to a majority of the court that the evidence discloses that the deceased on this occasion must have been guilty, and was guilty of such contributory negligence as, under the facts appearing here in the record, must defeat his recovery. It is said that he may not have gone directly from these steps to the place between the cars and crossed over, but that he may have been engaged in some way, attending to some call of nature, or some proper errand, after he had reached a position upon the ground in the cut where he could not see to the north upon the track and therefore could not observe the approach of the locomotive, and that if he had been engaged in that way for a little while so that the locomotive would have had time to come down upon this track, and move these cars, he would not or might not be guilty of contributory negligence in going between the cars without observing the approach of the locomotive; but it seems to us that the general rules of crossing cases have been applied in Wabash Railroad Co. v. Skiles, *supra*, by the Supreme Court, and the rules of this case seem to be that if a person can see or hear, by the exercise of care, he is bound to do so, and if the situation is such that it is difficult for him to see or hear, the duty is the same though the occasion for care is greater, and he must therefore exercise more care. If there is some obstruction to his seeing or hearing, that must be taken into account, and greater vigilance and care are imposed upon him; and so it seems to us that if the deceased had looked and seen a clear track and no locomotive approaching, he would not then be excusable if he went into a place near the track where he could no longer observe the track upon which the locomotive was likely to approach and remained there long enough for a locomotive to come in upon this track and come down to the cars so as to move them. He was well acquainted with the situation, well acquainted with the time that would be occupied in coming upon those tracks from the switch at the north and down to these cars. If one should walk there directly from the steps and go in between these cars he could get through very easily long before a locomotive could reach the cars by coming in from the switch. If deceased went down into a place where he could no longer observe the track and remained there long enough to permit a locomotive to come upon the track and come to the cars, it seems to us he would be guilty of negligence if he attempted to go between the

cars without again taking a position where he might observe the track; in other words, it would not excuse him if five minutes or one minute before he attempted to cross between the cars he had looked up the track and seen a clear track, any more than it would excuse him if ten minutes before he had looked and seen a clear track. The fact that he had once looked would not excuse him if he had allowed time enough to elapse after he had looked for the locomotive to come into a position where it would be dangerous for him to cross, and then attempted to cross without again looking.

I call attention to a case decided by the first circuit, which was affirmed by the Supreme Court without report, which seems to us to lay down a very just and proper rule upon this subject. It is the case of Pittsburgh, C. & St. L. Ry. v. Peters, 1 Circ. Dec. 20 (1. R. 34). The syllabus is:

"Generally a person who is about to cross a railroad track, must use his senses to ascertain whether a train is approaching the crossing, and if he fails to do so, and suffers injury in crossing the track, he is guilty of contributory negligence.

"Abstractly, under some circumstances a person is excused from using his senses to ascertain whether a train is approaching, but to render this rule applicable to any particular case, the facts and circumstances which excuse the plaintiff must be put in evidence.

"Where there is contributory negligence, the plaintiff cannot recover, although his negligence is slighter in degree than that of the defendants."

In course of the opinion Judge Swing says:

"This court held: Third, that the charge of the court to the effect that a person about to cross the railroad track may, under some circumstances, be excused from using his senses to ascertain whether a train be approaching, was correct as an abstract proposition of law, but that to render it applicable to any particular case, the circumstances relied upon to show an excuse for the plaintiff's failure, must be put in evidence by him, and that in the present case no excuse was shown for the omission upon his part, and it was error to give this statement of the law to the jury in this case.

We think that where the circumstances disclose or give rise to a presumption of contributory negligence, the matter of excuse must be shown by the injured person; and we do not understand that this rule is different in a case where the injured person is deceased; it must be shown on behalf of the person seeking a recovery on account of the accident. The suggestions here in argument of excuses for not looking and listening, are suggestions of problematical facts, but we have given them some consideration, at the same time it seems from this authority, which is approved by the Supreme Court, that it devolves upon a person seeking to recover to disclose an excuse for the person injured not using his senses where it seems to be apparent that by the use of his senses he could have discovered and avoided the injury. Language of practically the same import will be found in Pennsylvania Co. v. Morel, 40 Ohio St. 338, and in Railroad Co. v. Depew, 40 Ohio St. 121.

It is urged in argument on behalf of the defendant in error here, that he was not guilty of contributory negligence because the custom and practice of the company was to give warning of the approach of trains by the ringing of the bell or by the sending of a man ahead, and that the deceased might place some reliance upon their observing this custom, which might come to have the force and effect of a rule of the

company that it should give such warning, and that if he acted in reliance upon the observance of such custom he would not be negligent in so doing; that it would not lie in the mouth of the company to say that an employe must be vigilant and suspicious, and watch out all the time for a violation of duty upon the part of the company or some employe of the company. We think there is a great deal of force in this suggestion. We have given heed and weight to it heretofore in the consideration and decision of cases in this court. We call to mind a number of cases in which we have used language of like import, and notwithstanding what is said in Railway Co. v. Skiles, *supra*, in the course of the opinion, if such a case is as suggested in argument were presented by the record and certainly established, we would hesitate a long time before we would say that an employe might not rely in any degree or to any extent upon other employes performing their duties. We see nothing in the case of Railway Co. v. Skiles, *supra*, that would require us to hold in this case if the evidence disclosed such a rule or custom, that this employe might not have placed some reliance upon the observance by the company and its employes of such rules or customs, and that such reliance might not so far justify his action in passing between the cars as to authorize a jury to find that he was not guilty of contributory negligence. But we have no such case upon record. Among the cases to which we have applied this rule is the L. S. & M. S. Ry. Co. v. Schultz, 9 Circ. Dec. 816 [19 R. 639], where a man was run down by a locomotive on the Lake Shore road, and the Wells case [unreported], where a train was being run upon what was called the " wrong track " and an employe was walking upon the track in reliance upon the rule that no train or locomotive would be run upon that track in the direction in which this one was going, without warning to the employes; and there were some other cases mentioned in argument, but, as I have said, the case here, upon the evidence, is not brought within the principle there applied.

There was some evidence introduced on behalf of the plaintiff below tending to show that it was customary for the railroad company to give warning of the approach of locomotives or cars in this cut, and it was insisted by counsel for plaintiff below that notwithstanding there was nothing about this in the pleadings and it was not relied upon as a substantive ground for recovery, they had a right to show this to overcome the possible inference of contributory negligence arising out of his conduct; and it appears to us that counsel for the plaintiff below were correct in this contention. If they were not correct, we are bound to say that we do not understand the rule laid down in the case of Railroad Co. v. Whitacre, *supra*. The fact that the testimony may not have been admissible for some purpose, was not good ground for refusing to receive it. If it was admissible for any purpose, it was the duty of the court to allow it to go in and to give the jury proper instructions as to the use to be made of it. I say there was evidence of this kind introduced, but in the course of the trial it was all ruled from the jury, they were not allowed to give it any consideration, and the issue, therefore, was not submitted to nor passed upon by the jury. If the court had allowed that issue to be gone into fully by both sides and had submitted it to the jury and the jury had returned this verdict, it may be that we would have found ourselves able to sustain it; but we know of no authority for considering evidence which has been ruled out, or for determining results upon issues which might have been in the case but which were not

Pennsylvania Co. v. Mahoney.

submitted to the jury; and although it may be a hardship in some aspects and wrong to the defendant in error to take this testimony from the jury at the instance of a party and then for a reviewing court to feel obliged because of the insistence of the same party to give consideration to the fact that it has been taken from the jury, yet that is the situation as it is presented to us, and we feel bound to pass upon the record as we find it. We do not mean to intimate, much less decide, what we might do with a case coming up in the form upon the record that this was assumed to be argument by counsel for defendant in error, but, as the case stands, the majority of us feel that the verdict of the jury in so far as it finds that the deceased was not guilty of contributory negligence, was against the weight of the evidence, and for that reason and for that alone—that being the only error we discover in the record—the judgment of the court below will be reversed and the case remanded.

HULL, J., dissents.